JOHN E. LAWLOR, ESQ. (JL 3258)
Attorney for Plaintiff
129 Third Street
Mineola, New York  11501
(516) 248-7700
(516) 742-7675 (fax)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
THOMAS BATIK and ELISE BATIK,

                        Plaintiffs,

      -against-

PETER J. DAWSON, LISA DAWSON, BMG ADVISORY
SERVICES, LTD., ETHAN THOMAS CO., INC., BRASH
MANAGEMENT GROUP, INC., TAXX PLUS SERVICES,
LTD., FFP SECURITIES, INC., GRANITE FINANCIAL, LLC
and BRUCE BAKER,

                        Defendants.
-------------------------------------------------------------------------X

**COMPLAINT**

Index No.

Plaintiffs demand a
Trial by Jury

Plaintiffs **THOMAS BATIK** and **ELISE BATIK**, by his attorney, **JOHN E. LAWLOR, ESQ.**, complaining of the Defendants, sets forth and alleges as follows:

### JURISDICTION AND VENUE

1.    This Court has jurisdiction of this action under 28 U.S.C. §1331; 28 U.S.C. §1332; Section 22 of the Securities Act of 1933, 15 U.S.C. §77v (the "Securities Act"); §27 of the Securities Exchange Act of 1934 (15 U.S.C. §78(aa), et seq.) (the "Exchange Act"); and under principles of supplemental jurisdiction (28 U.S.C. §1367).

2.      This action arises out of violations of Section 10(b) of the Exchange Act (15 U.S.C. 78(j)(b)) and SEC Rule 10b-5 promulgated thereunder (17 C.F.R. 240.10b-5); Section 20(a) of the Exchange Act (15 U.S.C. §77(t)); Section 12(2) of the Securities Act (15 U.S.C. §77l(2)); Section 15 of the Securities Act (15 U.S.C. §77v); and the common law.

3.      In addition, this Court has diversity jurisdiction under 18 U.S.C. §1332 in that Plaintiffs are an individuals residing in the State of Florida; the individual Defendants Peter J. Dawson and Lisa Dawson are residents of the State of New York; the corporate Defendant BMG Advisory Services, Ltd., is a New York corporation with its principal place of business in New York; the corporate Defendant Ethan Thomas Co., Inc. is a New York corporation with its principal place of business in New York; the corporate Defendant Brash Management Group, Inc. is a New York corporation with its principal place of business in New York; the corporate Defendant Taxx Plus Services, Inc., is a New York corporation with its principal place of business in New York; the Defendant Granite Securities, LLC is a New York corporation with its principal place of business in Suffolk County, New York, and which transacted business in the County of Nassau, New York; the corporate Defendant FFP Securities, Inc.is, upon information and belief, a Missouri corporation with its principal place of business in St. Louis, Missouri, but which transacted business in within the County of Nassau, State of New York; and the individual Defendant Bruce Baker is a resident of the State of Connecticut or a state other than Florida but who transacted business in the County of Nassau, State of New York.  The matter in controversy, exclusive of interest and costs, exceeds the sum of Seventy Five Thousand ($75,000.00) Dollars.

4. In connection with the conduct complained of herein, Defendants, directly and/or indirectly, used the means and instrumentalities of interstate commerce, including the mails and interstate telephone communications.

5. Venue is proper within this district pursuant to 28 U.S.C. §1391(a)(1) and (a)(2) in that most of the Defendants reside in this district, the remaining Defendants transacted business within this District, and that all of the acts and practices, and the scheme and course of business and conduct charged herein took place in this district.

## PARTIES

6. At all times herein mentioned and herein relevant, Plaintiffs **THOMAS BATIK** and **ELISE BATIK** ("Plaintiffs") were and are individuals residing in the State of Florida.

7. At all times herein mentioned and herein relevant, Defendant **PETER J. DAWSON** is an individual residing in Suffolk County, New York.

8. At all times herein mentioned and herein relevant, Defendant **LISA DAWSON** is an individual residing in Suffolk County, New York and is the wife of Defendant Peter J. Dawson.

9. At all times herein mentioned and herein relevant, Defendant **BRUCE BAKER** was and is an individual residing in Stamford, Connecticut, but who transacted business in the County of Nassau, State of New York.

10. At all times herein mentioned and herein relevant, Defendant **BMG ADVISORY SERVICES, LTD.** ("BMG") is a New York corporation with its principal place of business at 384 EAB Plaza, Uniondale, N.Y. Upon information and belief, BMG was and is wholly-owned by Defendant Peter Dawson, who is also its President, and who held BMG out as an investment advisory business.

11. At all times herein mentioned and herein relevant, Defendant **ETHAN THOMAS CO., INC.** ("Ethan Thomas"), is a New York corporation with its principal place of business at 384 EAB Plaza, Uniondale, N.Y. Upon information and belief, Ethan Thomas was and is wholly-owned by Defendant Peter Dawson.

12. At all times herein mentioned and herein relevant, Defendant **BRASH MANAGEMENT GROUP, INC.** ("Brash") is a New York corporation with its principal place of business at 384 EAB Plaza, Uniondale, N.Y. Upon information and belief, Brash was and is wholly-owned by Defendant Peter Dawson.

13. At all times herein mentioned and herein relevant, Defendant **TAXX PLUS SERVICES, LTD. ("Taxx Plus")** is a New York corporation with its principal place of business at 384 EAB Plaza, Uniondale, N.Y. Upon information and belief, Tax Pluss was and is wholly-owned by Defendant Lisa Dawson who held Taxx Plus out as a tax preparation service.

14. At all times herein mentioned and herein relevant, Defendant **GRANITE FINANCIAL, LLC.** ("Granite") was and is New York corporation with its principal place of business in Cutchogue, NY. Granite was and is a securities broker and dealer licensed with the Securities and Exchange Commission and National Association of Securities Dealers, Inc., among others, so to do. From at least August, 2004, through December, 2005, Granite maintained a branch office at 384 EAB Plaza, Uniondale, N.Y.

15. At all times herein mentioned and herein relevant, Defendant **FFP SECURITIES, INC.** ("FFP") is a Missouri corporation with its principal place of business in St. Louis, MO. FFP was and is a securities broker and dealer licensed with the Securities and Exchange Commission and National Association of Securities Dealers, Inc., among others, so to

do. From at least July, 2006 through November, 2006, FFP maintained a branch office at 384 EAB Plaza, Uniondale, N.Y.

16. During the period August, 2004 through October, 2005, Defendant Peter Dawson was registered as a representative of Defendant Granite.

17. During the period November, 2004 through December of 2005, Defendant Baker was registered a representative of Defendant Granite; and during the period July, 2006 through November, 2006, Baker was registered as a representative of Defendant FFP.

18. The acts, practices and course of conduct complained of emanate out of the operation of the Granite/FFP office located at 384 EAB Plaza, Uniondale, N.Y. and the activities of Dawson and Baker acting within the course and scope of their actual and/or apparent authority.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

19. Beginning in or about 2004, though possibly earlier, and continuing until November, 2006, Peter Dawson misappropriated assets of his securities customers, including the Plaintiffs, herein through a purported investment vehicle or account with or one or more of the corporate Defendants. In this case, Peter Dawson advised the Plaintiffs to surrender variable annuity contracts and to refinance their home, and then to transfer the proceeds to BMG and later Defendant Ethan Thomas.

20. In September, 2004, Peter Dawson, while registered and employed by Granite, solicited Plaintiffs (who then lived in West Hempstead) to refinance their house. Plaintiffs had been clients of Peter Dawson for at least 10 years and trusted him. Peter Dawson made all arrangements attendant to the refinance. Peter Dawson in fact attended the closing and advised Plaintiffs to transfer the proceeds (less a portion they were using as a down payment on their

5

current Florida residence) to a special account. Peter Dawson guaranteed Plaintiffs a 15% return on their money on their investment and, since Peter Dawson had control of the money, he further promised to make the mortgage payments on the West Hempstead house.

21. In May, 2005, Peter Dawson had the Plaintiffs sign a new account application with Defendant Granite in connection with a purported transfer of Plaintiffs' accounts.

22. During roughly this same period it appears Peter Dawson caused certain Variable Annuity Contracts and possibly other retirement vehicles to be redeemed and the proceeds deposited into his fictitious account program.

23. In or about August, 2005, Plaintiffs sold their New York home, and Peter Dawson advised Plaintiffs to transfer those proceeds to the Defendants for Peter Dawson to manage. In total the Plaintiffs transferred over $700,000. to Peter Dawson and the entities he purportedly represented.

24. Peter Dawson would provide Plaintiffs with sporadic statements of a purported investment account with BMG including writings dated February 1, 2005 and June 1, 2005 which fraudulently misrepresented fictitious account balances with Defendant BMG.

25. Thus Plaintiffs were led to believe that they had money on deposit with BMG and Granite when in fact their money was commingled with other investors' funds.

26. Unbeknownst to Plaintiffs, Peter Dawson was similarly advising countless other clients to transfer their money to Peter Dawson and some of the Defendants in what appears to be a classic Ponzi scheme.

27. On March 24, 2006, in an in person meeting at the office of Peter Dawson and Granite, Peter Dawson provided Plaintiffs with a document entitled "Disbursement Account Analysis" which purports to show a segregated account balance of $736,238.96.

28. Based on the allegations in a related Securities and Exchange Commission complaint, Peter Dawson collected monies from many clients, either on the sale or refinance of their homes, or from the sale of legitimate investment securities, and deposited these monies in various corporate accounts, including BMG, Brash, Ethan Thomas, and Taxx Plus. While the Defendants' records have been seized by the SEC and Nassau County District Attorney's office, it appears that Peter Dawson, with the knowledge and consent of Defendants Lisa Dawson and Bruce Baker, maintained detailed records maintained in the FFP/Granite office where he detailed the monthly mortgage obligations and "returns" that had been promised to each investor. As relates to the Plaintiffs, Peter Dawson would transfer money from one account to another, and make Plaintiffs' mortgage payment, first in New York, and later in Florida, as well as Peter Dawson made an occasional disbursement as requested by the Plaintiffs. While this stopped in or about March, 2006, after one of Peter Dawson's checks bounced, it appears that all of the records were maintained in the FFP/Granite office in Uniondale, New York and that fraudulent transfers of these and other clients monies took place through October, 2006; that mail, e-mail and faxes were sent to the Plaintiffs, in preparation or concealment of the fraud, out of that office subject to the jurisdiction, supervision and control of Defendants Granite and later FFP; and that Granite and FFP supervisors and employees were aware of and, in the case of Defendant Baker, actively participated in the conduct of Peter Dawson.

29. By August, 2006, Peter Dawson's house of cards started to collapse. A second check had bounced, and the Plaintiffs were paying their mortgage out of their limited savings and Mr. Batik's earnings and Plaintiffs began pressuring Peter Dawson for a report on the status of their accounts.

7

30. On August 15, 2006, Plaintiffs were given an **FFP** Securities' new account form in connection with the purported transfer of their accounts to **FFP**, though at this point Peter Dawson was no longer registered in the securities industry. Defendant Baker was however still employed by FFP.

31. On October 25, 2006, Plaintiffs received a letter signed by Bruce Baker, then still employed by FFP, confirming a "certified balance of $884,522.14 managed by BMG" which also confirms that the "broker dealer on your account is First Financial Planners".

32. It appears that Peter Dawson and his wife absconded with and/or diverted all of the monies entrusted to them and Plaintiffs' demands for payment from the Defendants Dawson and Defendant Baker have gone unanswered.

### AS AND FOR A FIRST CAUSE OF ACTION
(Against Peter Dawson and Lisa Dawson, BMG,
Ethan Thomas, Brash Management Group, Inc.
Taxx Plus and Granite)

33. Plaintiffs repeat and reallege paragraphs "1" through "32" hereof as if the same were more fully set forth at length herein.

34. Defendant Peter Dawson induced the Plaintiffs to rely on his investment advice concerning the Plaintiffs' money and retirement accounts by fraudulently guaranteeing security and a high rate of return and willfully omitted, misrepresented and concealed the fact that Plaintiffs' money were commingled, misapplied and misappropriated by Peter Dawson, his wife and the entities associated with them.

35. During the relevant time period, Defendants Dawson made untrue statements of material fact and omitted to state material facts necessary in light of the circumstances to make such statements not misleading, in breach of duties owed to the Plaintiffs to deal truthfully and

8

fairly. Defendants Dawson knew or acted in reckless disregard of the fact that their misrepresentations, omissions and concealment of the truth were false when made to the Plaintiffs and were materially misleading.

36. Defendants Dawson who knew or should have known of the Plaintiffs' investment objectives, concealed their willful misconduct by the misrepresentations and omissions set forth above, which are repeated, realleged and incorporated by reference herein.

37. By reason of the foregoing, Defendants Peter and Lisa Dawson and Defendants BMG, Ethan Thomas, Brash and Taxx Plus, acting separately in concert, by the use of means and instrumentalities of interstate commerce, and by the mails, have employed devices, schemes and artifices to defraud, have made untrue statements of material fact and have omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and have engaged in acts, practices and courses of business which operated as a fraud and deceit upon Plaintiffs, in connection with the offer and sale of securities, in violation of Section 10(b) of the Exchange Act, 15 U.S.C. 78(b), and Rule 10b-5 promulgated thereunder.

38. Defendant Granite through contract, agency or otherwise controlled Defendant Peter Dawson, a person liable to these Plaintiffs under Section 10(b) of the Exchange Act, and are therefore jointly and severally liable to these Plaintiffs with and to the same extent as Defendants Peter Dawson and Baker.

39. Defendant Granite failed to maintain and enforce supervisory procedures adequate to detect and prevent such activity and failed to attempt to supervise Peter Dawson or their branch office.

9

40. By virtue of the foregoing, Defendant Granite is liable to these Plaintiffs under Section 20 of the Exchange Act and is therefore jointly and severally liable to these Plaintiffs with and to the same extent as Defendant Peter Dawson.

41. Granite is separately liable under the doctrine of Respondeat Superior.

42. By virtue of the foregoing, the Plaintiffs have been damaged, and are entitled to recover of the Defendants an amount to be proved at the hearing of this matter, but believed to be $736,238.96 representing out-of-pocket losses incurred as a result of all matters complained of.

### AS AND FOR A SECOND CAUSE OF ACTION
### (Against Peter Dawson and Lisa Dawson, BMG, Ethan Thomas, Brash Management Group, Inc. Taxx Plus and Granite)

43. Plaintiff repeats and realleges paragraphs "1" through "32" and "34" through "41" hereof as if the same were more fully set forth at length herein.

44. The foregoing conduct of Defendants constitutes common law fraud in the State of New York or the State of Florida, as the case may be.

45. By virtue of the foregoing, the Plaintiffs have been damaged, and are entitled to recover of the Defendants an amount to be proved at the hearing of this matter, but believed to be $736,238.96 representing out-of-pocket losses incurred as a result of all matters complained of.

### AS AND FOR A THIRD CAUSE OF ACTION
### (Against Peter Dawson and Lisa Dawson, BMG, Ethan Thomas, Brash Management Group, Inc. Taxx Plus and Granite)

46. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "32", "34" through "41", and "44" inclusive hereof, as if the same were more fully set forth at length herein.

47. By reason of the foregoing, these Defendants have converted Plaintiffs' property.

48. By virtue of the foregoing, the Plaintiffs have been damaged, and is entitled to recover of the Defendants an amount to be proved at the hearing of this matter, but believed to be $736,238.96 representing out-of-pocket losses incurred as a result of all matters complained of.

### AS AND FOR A FOURTH CAUSE OF ACTION
### (Against All Defendants)

49. Plaintiffs repeat and reallege paragraphs "1" through "32", "34" through "41", "44" and "47" hereof as if the same were more fully set forth at length herein.

50. The trading program foisted upon the Plaintiffs was unauthorized and unsuitable in the extreme in light of the Plaintiffs' investment objectives, financial needs risk tolerance, and specific authorizations.

51. Defendant Peter Dawson was advised by the Plaintiffs that their monies were to be invested for little risk to principal, that the money represented retirement savings and the proceeds from the sale of their principal residence, and that the Plaintiffs needed and desired the account to be invested conservatively. Defendant Peter Dawson therefore had fiduciary obligations to recommend only those investments suitable for Plaintiffs and certainly not to misappropriate those monies or apply them to Peter Dawson's obligation to other clients from whom he stole money.

52. Defendant Peter Dawson failed to adhere to Plaintiffs' investment objectives relative to maintenance of the account and the investment of Plaintiffs' money. The Corporate Defendants Granite and FFP and their branch Manager and/or designated supervisors failed to conduct a review of Peter Dawson's activity or that of Baker and utterly failed to supervise these individuals or their branch.

53. As a direct result of FFP and Granite's lack of supervision of the Plaintiffs' accounts, Baker and Peter Dawson, and their branch office the corporate Defendants, exposed the Plaintiffs to unnecessary and avoidable risk and the damages alleged herein.

54. Plaintiffs did not authorize, order, understand, control or approve the improper activity for their accounts or their monies.

55. Defendants' actions were intentional, willful and knowing and the Corporate Defendants Granite and FFP failure to supervise its brokers and their branch was at best reckless as they were on notice of Peter Dawson's substantial regulatory history either at the time he was hired or, in the case of FFP, in allowing Peter Dawson to transact business out of their offices, though not registered with them.

56. By virtue of the foregoing, the Plaintiffs have been damaged, and are entitled to recover of the Defendants an amount to be proved at the hearing of this matter, but believed to be $736,238.96 representing out-of-pocket losses incurred as a result of all matters complained of.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Against All Defendants)

57. Plaintiffs repeat and reallege paragraphs "1" through "32", "34" through "41", "44", "47" and "50" through "55" hereof as if the same were more fully set forth at length herein.

58. Defendant Peter Dawson exercised complete discretion and control over Plaintiffs' funds. Defendant Peter Dawson, as the Plaintiffs' broker and investment adviser, owed the Plaintiffs a duty of full disclosure, honesty and complete candor in its dealings with them. Defendant Peter Dawson as the Plaintiffs' broker, knew or reasonably should have known, that the

Plaintiffs required careful treatment of their account and moneys deposited with Peter Dawson. The Corporate Defendants FFP and Granite failed to advise the Plaintiffs that Peter Dawson was unqualified and unable to provide the appropriate advice.

59.   Defendant Peter Dawson owed the Plaintiffs the duty to make full disclosure of all material facts necessary for the Plaintiffs to make informed investment decisions, to recommend and engage only in strategies consistent with the Plaintiffs' investment objectives, to faithfully and diligently carry out Plaintiffs instructions, and to provide accurate and truthful information about the accounts and the monies entrusted with him.

60.   Defendant Peter Dawson, as the broker/fiduciary for the Plaintiffs' account and monies, owed a duty to the Plaintiffs: to act in a fair, honest, just, trustworthy and equitable manner; to act in furtherance of the best interests of the Plaintiffs: to refrain from abusing their position of control over the Plaintiffs' account and money; to provide accurate and reliable information on the financial status of the accounts and the monies entrusted to them and not to favor his own interests at the expense of the Plaintiffs. Defendants conducted themselves towards the Plaintiffs in a willful, reckless and malicious manner by undertaking to deceive and harm the Plaintiffs by misrepresentations and conduct that placed the Plaintiffs' monies at extraordinary risk, which was known or should have been known to Defendants, and all of them. The actions of Defendants Granite and FFP which failed to exercise the necessary supervision, violated the Corporate Defendants' own compliance procedures, and industry policies, rules, regulations and standards of conduct.

61. The Defendants Granite and FFP have violated NASD Conduct Rule 2110, requiring that broker-dealers in the conduct of their business shall observe high standards of commercial honor and just and equitable principles of trade; and the Corporate Defendants Granite and FFP have violated NASD Conduct Rule 3010, requiring that broker-dealers must establish, maintain and enforce appropriate supervisory procedures with respect to the conduct of their business, supervision of their offices and individuals registered with them.

62. By virtue of the foregoing, the Plaintiffs have been damaged, and is entitled to recover of the Defendants an amount to be proved at the hearing of this matter, but believed to be $736,238.96 representing out-of-pocket losses incurred as a result of all matters complained of.

### AS AND FOR A SIXTH CAUSE OF ACTION
### (Against Granite, FFP and Baker)

63. Plaintiffs repeat and reallege paragraphs "1" through "32", "34" through "41", "44", "47", "50" through "55" and "58" through "61" hereof as if the same were more fully set forth at length herein.

64. The Corporate Defendants Granite and FFP hired Peter Dawson and Baker, as the case may be, and failed to supervise Peter Dawson and Baker, overlooking or ignoring warning signals. The Corporate Defendants Granite and FFP should have taken steps to protect their customers and the public from their employee's, agent's and representative's, and even supervisor's improper activities. Such Defendants failure to supervise their brokers and their branch office diligently violated NASD Conduct Rule 3010.

65. Upon information and belief, the Corporate Defendants Granite and FFP and their employees, agents and representatives failed to comply with their own rules and regulations

contained in their internal compliance procedures and policies, rules, regulations and standards of conduct.

66. By virtue of the foregoing, the Plaintiffs have been damaged, and are entitled to recover of the Defendants an amount to be proved at the hearing of this matter, but believed to be $736,298.96 representing out-of-pocket losses incurred as a result of all other matters complained of.

**WHEREFORE**, by reason of, as cause of and in consequence of the misconduct engaged in by Defendants, in the handling of the Plaintiffs' accounts and monies, Plaintiffs request; (i) compensatory and/or recessionary and other damages in an amount to be proved but not less than $736,238.96; (ii) accrued interest from the date of loss to the date of judgment and payment of final judgment herein; (iii) punitive damages in an amount to be determined by the Court; (iv) attachment of assets, expedited discovery in aid of attachment, and temporary restraints, as necessary, (v) reasonable attorneys' fees; (vi) costs, expert and witness fees; and (vii) for such other further and different relief as to the court seems appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury as to all issues so triable.

Dated: Mineola, New York
December 14, 2006

By: _____
JOHN E. LAWLOR, ESQ. (JL3258)
Attorney for Plaintiffs
129 Third Street
Mineola, N.Y. 11501
(516) 248-7700
(516) 742-7675 - Facsimile
JLaw672@aol.com - E-mail

15