UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

№ 06-CV-6191 (JFB) (WDW)
_____

DAVID L. PARKER, MEROLYN G. PARKER,

Plaintiffs,

VERSUS

PETER DAWSON, BRASH MANAGEMENT GROUP INC., BMG ADVISORY SERVICES, LTD., ETHAN THOMAS CO., INC.,

Defendants.

_____

№ 06-CV-6627 (JFB) (WDW)
_____

THOMAS BATIK, ELISE BATIK,

Plaintiffs,

VERSUS

PETER J. DAWSON, LISA DAWSON, BMG ADVISORY SERVICES, LTD., ETHAN THOMAS CO., INC., BRASH MANAGEMENT GROUP INC., TAXX PLUS SERVICES, LTD., FFP SECURITIES, INC.,

Defendants.

MARIA MAURO,

Plaintiff,

VERSUS

COUNTRYWIDE HOME LOANS, INC., MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., PETER J. DAWSON, BMG ADVISORY SERVICES, LTD.,

Defendants.

———————————

MEMORANDUM AND ORDER
August 27, 2007

———————————

JOSEPH F. BIANCO, District Judge:

Plaintiffs in the above-entitled actions seek to recover against Peter J. Dawson ("Dawson"), and others, for injuries allegedly suffered as a result of Dawson's misappropriation of funds invested by plaintiffs in two investment advisory corporations operated by Dawson.[1] The Nassau County District Attorney (the "NCDA") has also initiated a criminal proceeding against Dawson based, in part, on the same conduct at issue in the civil actions.[2] Dawson now seeks to stay all proceedings in the civil actions pending resolution of the criminal action. In addition, although not a party to the civil actions, the NCDA has submitted affidavits in support of Dawson's motion to stay. For the reasons that follow, the Court finds that the interests of justice require a stay of discovery in the civil actions pending resolution of the criminal action against Dawson.

I. BACKGROUND AND PROCEDURAL HISTORY

The parties' familiarity with the facts unique to each of the respective actions at issue is presumed. Nevertheless, as set forth below, the Court briefly recites the common facts relevant to resolution of the instant motion.

---

[1] Hereinafter, the above-entitled actions are referred to collectively as "the civil actions," unless otherwise noted.

[2] Hereinafter, the criminal proceeding against Dawson is referred to as "the criminal action."

### 1. The Criminal Action

Dawson is the sole shareholder and president of two investment advisory corporations, BMG Advisory Services Ltd. ("BMG") and Ethan Thomas Co., Inc. ("Ethan Thomas") (collectively, "the Dawson defendants"). (Dawson Mot., Ex. B.) On December 22, 2006, the NCDA filed a felony criminal complaint against Dawson in New York Supreme Court, Nassau County, charging him with twelve counts of grand larceny in the second degree and two counts of scheme to defraud in the first degree.[3] The criminal complaint alleges that Dawson, through his investment advisory corporations, misappropriated "more than $10 million" from clients within Nassau County. (Mainusch Aff., ¶¶ 4-5.) Specifically, the criminal complaint alleges that Dawson advised his clients to transfer funds to the corporations, and then, rather than invest the clients' funds as promised, Dawson stole the funds for his own use. (Dawson Mot., Ex. C.) Dawson has been incarcerated since the date of the filing of charges.

The most recent report from the NCDA regarding the status of the criminal action indicates that Dawson appeared in Nassau County Court on August 1, 2007, and that the case was adjourned to September 28, 2007, "for further conference and possible disposition." (Mainusch's Aug. 14, 2007 Ltr.) In addition, according to the NCDA, its investigation of Dawson's alleged criminal conduct is ongoing. (*Id.*)

### 2. The Civil Actions

On November 20, 2006, plaintiffs David L. and Merolyn G. Parker (collectively, the "Parkers") filed an action against the Dawson defendants, alleging state common law claims (the "Parker action"). On January 11, 2007, the Parkers moved for a default judgment against the defendants in that action, and the Clerk of the Court entered a default on that day. Dawson moved to stay the Parker action on March 9, 2007.

On December 14, 2006, plaintiffs Thomas and Elise Batik (collectively, the "Batiks") filed an action against the Dawson defendants and others allegedly associated with the Dawson defendants and/or the fraudulent transactions initiated by Dawson, alleging federal securities law and state common law claims (the "Batik action"). The case was reassigned to the undersigned on March 13, 2007. Dawson moved to stay the Batik action on March 29, 2007.

On February 8, 2007, plaintiff Maria Mauro ("Mauro") filed an action in New York State Supreme Court, Nassau County, against Dawson, BMG, and others allegedly associated with Dawson and/or the fraudulent transactions initiated by Dawson, alleging Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*, and state common law claims

---

[3] The Court takes judicial notice of the filings in the civil actions, the SEC action, and the criminal action, not for the truth of the matters asserted therein, but for the existence of such filings. *Global Network Comm'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (citing *Lum v. Bank of America*, 361 F.3d 217, 222 n.3 (3d Cir. 2004)) (internal quotation marks omitted); *see In re Sterling Foster & Co., Inc., Sec. Litig.*, 222 F. Supp. 2d 216, 253-54 (E.D.N.Y. 2002); *Seneca Ins. Co. v. Wilcock*, No. 01 Civ. 7620 (WHP), 2002 WL 1067828, at *2 (S.D.N.Y. May 28, 2002).

(the "Mauro action").[4] The case was removed to this Court on March 26, 2007. Dawson moved to stay the Mauro action on May 25, 2007.[5]

### 2. The SEC Action

On November 30, 2006, the SEC filed a civil complaint against the Dawson defendants, alleging violations of federal securities laws (the "SEC action"). Specifically, the SEC alleges that Dawson, through his investment advisory corporations, has misappropriated funds of more than $2 million from at least seven investment advisory clients. (SEC Compl. ¶ 1.) According to the complaint, Dawson targeted elderly clients, advised these clients to "surrender existing variable annuity policies, mortgage their residences, and transfer the proceeds to Ethan Thomas for Dawson to manage through BMG, his investment advisory firm." (*Id.*) Furthermore, the SEC alleges that Dawson assured his clients that they would receive a "12 to 15 percent return"

---

[4] By stipulation dated May 7, 2007, Mauro discontinued all claims against defendant Mortgage Electronic Registration Systems, Inc.

[5] Dawson's counsel also represents that three civil actions arising out of the same conduct at issue here have been filed against Dawson in New York State Supreme Court, Nassau County. (Dawson's Mot., at 1.) In addition, on January 17, 2007, plaintiffs Anthony and Theresa Iannuzzi (collectively, the "Ianuzzis") filed an action in New York State Supreme Court, Nassau County, against the Dawson defendants and others, alleging TILA, RESPA, and state common law claims (the "Iannuzzi action"). The case was removed to this Court on March 6, 2007. However, none of the Dawson defendants have appeared in the Ianuzzi action, and, as such, have not submitted a motion to stay the action.

on their investments, and that, with regard to those clients whom he advised to take on mortgages, Dawson promised to satisfy the clients' monthly mortgage obligations. (*Id.* ¶ 2.) However, according to the SEC, Dawson did not invest the clients' funds nor satisfy their mortgage obligations as promised but rather misappropriated the clients' investments for his own use. (*Id.* ¶ 3.)

On January 3, 2007, the NCDA filed a motion to intervene in the SEC action in order to seek a stay of discovery pending the resolution of the state criminal case against Dawson. The NCDA argued that a stay of discovery was appropriate because, although an indictment had not yet been issued against Dawson, the matter would soon be submitted to a grand jury and, thus, "the discovery of the documents and deposition testimony of victims [of Dawson's alleged fraudulent conduct] . . . will clearly interfere with the Grand Jury investigation and undermine the Grand Jury process" in the criminal action against Dawson. (*S.E.C. v. Dawson*, No. 06 Civ. 6360 (hereinafter, "*S.E.C. v. Dawson*"), NCDA's Jan. 2, 2007 Ltr., at 2.)

On February 2, 2007, the Honorable E. Thomas Boyle, United States Magistrate Judge, granted NCDA's motion to intervene and to stay discovery, but reserved judgment on the issue of the scope and duration of the stay. (*S.E.C. v. Dawson*, Feb. 2, 2007 Order.) Subsequently, on February 9, 2007, Judge Boyle entered an order staying all discovery, save for limited discovery to be conducted by the SEC "for the purposes of . . . monitoring [the defendants'] compliance with the asset freeze . . . already ordered in this matter . . . and . . . uncovering assets transferred by

4

[d]efendants to third parties."[6] (*S.E.C. v. Dawson*, Feb. 9, 2007 Order, at 1.) In addition, the February 9 order indicated that the stay would remain "in place until the date on which the criminal proceedings initiated by the NCDA against [Dawson] in Nassau County are resolved, either by verdict or pre-trial disposition," and extended the time for defendants to answer the complaint until fourteen days after the "lifting of the stay." (*Id.* at 2.)

### 3. The NCDA's Affidavits

The NCDA has joined in Dawson's request for a stay of the civil actions. Specifically, in each action, the NCDA has submitted an affidavit from an Assistant District Attorney stating that the respective actions should be stayed for the same reasons cited in the NCDA's prior motion to stay filed in the SEC action, and in Judge Boyle's February 2, 2007 order granting a stay of discovery in the SEC action.

## II. THE MOTION TO STAY

### A. Standard of Review

It is well settled that a court has the authority to stay an action pending the outcome of criminal proceedings. *Kashi v. Gratsos*, 790 F.2d 1050, 1058 (2d Cir. 1986) ("[A] court may decide in its discretion to stay civil proceedings . . . when the interests of justice seem . . . to require such action.") (quoting *SEC v. Dresser Indus.*, 628 F.2d 1368, 1372 (D.C. Cir. 1980)) (internal quotation marks and additional citation omitted); *see e.g., JHW Greentree Cap., L.P. v. Whittier Trust Co.*, No. 05 Civ. 2985 (HB), 2005 WL 1705244, at *1 (S.D.N.Y. July 22, 2005); *Sterling Nat'l Bank v. A-1 Hotels Intern., Inc.*, 175 F. Supp. 2d 573, 575-76 (S.D.N.Y. 2001); *Rosenthal v. Guiliani*, No. 98 Civ. 8408 (SWK), 2001 WL 121944, at *2 (S.D.N.Y. Feb. 9, 2001); *see also* Fed. R. Civ. P. 26(c) (permitting a court to order that "discovery not be had" or "may be had only on specified terms and conditions, including a designation of the time or place" upon motion by a party "from whom discovery is sought" and a showing of "good cause"). However, a stay "is not constitutionally required whenever a litigant finds himself facing the dilemmas inherent in pursuing civil litigation while being the subject of a related criminal investigation." *Sterling Nat'l Bank*, 175 F. Supp. 2d at 575 ("In the absence of substantial prejudice to the rights of the parties involved, [simultaneous] parallel [civil and criminal] proceedings are unobjectionable under our jurisprudence.") (citing *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995)) (internal quotation marks and citations omitted). Therefore, to determine whether a stay is appropriate, the following factors are generally considered:

> (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case, including whether the defendant has been indicted; (3) the private interests of the plaintiff in proceeding expeditiously, weighed against the prejudice to plaintiff caused by the delay; (4) the private interests of and burden on the defendant; (5) the public interest; and (6) the interest of the Court in the

---

[6] Dawson opposed the motion for a stay in the SEC action only "to the extent that the [stay] order would permit the SEC to conduct discovery of transfers made prior to the entry of the Temporary Restraining Order" in that case. (Tomao's Feb. 8, 2007 Ltr. filed in *S.E.C. v. Dawson*.)

5

efficient management of cases.

*JHW Greentree*, 2005 WL 1705244, at *1 (quoting *S.E.C. v. Treadway*, No. 04 Civ. 3464 (VM) (JCF), 2005 WL 713826, at *2-*3 (S.D.N.Y. March 30, 2005)). Furthermore, "district courts in this Circuit 'generally grant the extraordinary remedy of a stay only after the defendant seeking a stay has been indicted.'" *Sterling Nat'l Bank*, 175 F. Supp. 2d at 576 (quoting *Citibank, N.A. v. Hakim*, No. 92 Civ. 6233 (MBM), 1993 WL 481335, at *1 (S.D.N.Y. Nov. 18, 1993)); *see also In re Par Pharmaceutical*, 133 F.R.D. 12, 13 (S.D.N.Y. 1990) ("The weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment, . . . but will deny a stay of the civil proceeding where no indictment has issued.") (internal citations omitted).

### B. Discussion

#### 1. Dawson

As a threshold matter, the Court addresses the scope of Dawson's motion.[7] Dawson seeks to "stay proceedings" in these actions. By contrast, the stay obtained by the NCDA in the SEC action extended only to a stay of *discovery* in that action; similarly, the NCDA's affidavit in support of Dawson's motion requests a stay of discovery, rather than a stay of "the proceedings" in the civil actions. The Court finds that the distinction between a stay of discovery and a stay of "the proceedings" is immaterial. That is, under the circumstances of the civil actions, a stay of discovery would effectively stay the entirety of the proceedings.

As to the merits of the motion to stay, the Court finds that, for the following reasons, the civil actions should be stayed pending resolution of the criminal case against Dawson. The Court bases this determination on an examination of the above-cited factors.

#### a. Overlap of the Issues

First, the issues in the criminal case directly overlap with those in the civil actions. According to the respective complaints in the civil actions, plaintiffs seek to recover, *inter alia*, for Dawson's misappropriation of certain funds during 2006, when the funds were transferred by plaintiffs to Dawson's corporations in reliance on Dawson's allegedly fraudulent representations that he would invest the funds and/or that he would use the profits from such investments to cover certain plaintiffs' mortgage payments. Similarly, in the criminal action, the charges against Dawson specifically arise from Dawson's alleged misappropriation of investment funds transferred to his investment advisory corporations and his fraudulent promises to cover certain clients' mortgage payments, all of which allegedly occurred during the period from January 1, 2003, through November 7, 2006. (*See* Dawson Mot., Ex. C.) Therefore, because the wrongful conduct alleged in the civil actions

---

[7] Although Dawson has submitted separate motions to stay in the Parker, Batik, and Mauro actions and certain other defendants in the Batik action have submitted similar motions, the motions present substantially similar arguments and, as such, the Court shall, for the purposes of simplicity and brevity, refer to the motions collectively as "Dawson's motion." For the same reasons, the respective arguments offered by plaintiffs and Countrywide Home Loans, Inc. ("Countrywide"), a defendant in the Mauro action, in opposition to Dawson's motion shall be referred to collectively as "plaintiffs' arguments."

6

is a subset of that alleged in the criminal action, this factor strongly weighs in favor of granting a stay. That is, because the criminal and civil actions involve the same matters, denial of the stay "might undermine [Dawson's] Fifth Amendment privilege against self-incrimination, . . . expose the basis of the defense to the prosecution in advance of criminal trial, or otherwise prejudice the [criminal] case." *Dresser Indus.*, 628 F.3d at 1375; *see also Volmar Distrib., Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993) ("The most important factor at the threshold is the degree to which the civil issues overlap with the criminal issues.") (quoting Judge Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 203 (S.D.N.Y. 1989)[8] (hereinafter, "*Parallel Proceedings*")).

b. Status of the Criminal Case

The Court also finds that the status of the criminal case favors a stay of the civil actions. Here, although Dawson has not been indicted in the criminal action, a felony complaint has been filed against Dawson, and a criminal investigation regarding his conduct is currently ongoing. (*See* Dawson's Mot., Ex. C; Mainusch's Aug. 14, 2007 Ltr.) Plaintiffs argue that the fact that Dawson has not yet been indicted weighs against a stay of the civil actions. However, a review of the relevant case law indicates that, for the purposes of analyzing the "status" factor in a stay inquiry and under the circumstances of this case, the filing of a felony complaint against Dawson should be treated as the substantial equivalent of an indictment. Indeed, it is well-settled that the significant distinction with regard to this factor is not whether a party has been charged by means of an indictment rather than a criminal complaint, but whether the criminal proceedings have substantially progressed beyond the investigatory stage to the filing of formal charges against a particular defendant, so that there is an imminent likelihood that the defendant will be subject to a criminal proceeding, including a trial, in the very near future. *See, e.g., Treadway*, 2005 WL 713826, at *3 (staying a civil proceeding where "formal criminal charges have been brought" against a defendant, and noting that "[c]ourt[s] generally decline to stay civil proceedings when a related criminal matter is still in the investigatory stage"); *Vardi Trading Co. v. Overseas Diamond Corp.*, No. 85 Civ. 2240 (CSH), 1987 WL 17662, at *1 (S.D.N.Y. Sept. 23, 1987) (staying civil action where "a criminal information" had been filed against the defendants in Florida State court); *see also Parallel Proceedings*, 129 F.R.D. at 216 ("[B]efore proceedings [are] initiated, . . . [a] stay [is] rarely granted. If proceedings are in full swing, a stay may be appropriate."); *In re Par Pharm., Inc. Sec. Litig.*, 133 F.R.D. 12, 13 (S.D.N.Y. 1990) ("The weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment."); *cf. JHW Greentree*, 2005 WL 1705244, at *1 ("[T]he difference between being a 'target' of an investigation and indicted weighs significantly against the

---

[8] *Parallel Proceedings* is the record of a lecture entitled "Parallel Civil and Criminal Proceedings" that was given by the Honorable Milton Pollack, District Court Judge, at the "Transferee Judges' Conference" in October 1989. It was reprinted in the Federal Rules Decisions volume, and is often cited by courts addressing the subject of such parallel proceedings. *See, e.g., Microfinancial, Inc. v. Premier Holidays Intern., Inc.*, 385 F.3d 72, 79 (1st Cir. 2004) (citing *Parallel Proceedings*); *U.S. Commodity Futures Trading Com'n v. A.S. Templeton Group, Inc.*, 297 F. Supp. 2d 531, 534 (E.D.N.Y. 2003) (same).

granting of a stay."). As the court noted in *Trustees of Plumbers and Pipefitters Nat'l Pension Fund, et al. v. Transworld Mechanical, Inc.*:

> A stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct for two reasons: first, the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued, and second, the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved.

886 F. Supp. 1134, 1139 (S.D.N.Y. 1995); *see also Sterling Nat'l Bank*, 175 F. Supp. 2d at 577. These reasons also apply where a felony complaint, rather than an indictment, has been filed against a party. In other words, like an indictment, the felony complaint, under the circumstances of this case, also subjects Dawson to "substantial criminal exposure," and, therefore, creates a likelihood that Dawson may make incriminating statements in the civil actions, and diminishes the prejudice to plaintiffs, as a disposition of the criminal case is more likely to be forthcoming.[9] *See Parallel Proceedings*, 129 F.R.D. at 204. Accordingly, because Dawson has already been charged in the criminal action, this factor favors a stay of the civil actions.

c. Balancing Interests

An examination of the various interests at stake here makes it clear that a stay of the civil actions is warranted. First, the private interests of plaintiffs, although substantial, do not outweigh Dawson's interests in "avoiding the quandary of choosing between waiving [his] Fifth Amendment rights or effectively forfeiting the civil case" and the other risks, discussed *supra*, associated with a denial of the stay. *Transworld Mechanical*, 886 F. Supp. at 1140; *see also Treadway*, 2005 WL 713826, at *4. Specifically, plaintiffs variously assert that they have an interest in recovering from Dawson as quickly as possible in order to avoid (1) the "extreme financial hardships imposed on them by [Dawson]" (Batik Opp. at 5; Countrywide's Opp., at 8); (2) certain restrictions on plaintiff Mauro's ability to transfer properties subject to mortgages allegedly obtained on the basis of Dawson's fraudulent representations, and on Countrywide's ability to foreclose on such properties (Mauro Obj. ¶ 23; Countrywide's Opp., at 9-10); (3) the accrual of additional interest on the mortgages for which Dawson is allegedly liable (*Id.* ¶ 24); (4) delay in plaintiffs' ability to learn of additional defendants during discovery and to assert claims against such defendants (Mauro Obj. ¶ 25); and (5) extending the period of time in which Dawson and/or his wife, Lisa Dawson

---

[9] Plaintiffs argue that a resolution of the criminal actions is not likely to be forthcoming due to the fact that Dawson has waived his speedy trial rights on several occasions in the criminal action in relation to requests for adjournments pending further plea negotiations. The Court finds plaintiffs' argument to be unpersuasive. Dawson's waiver of speedy trial rights on several occasions does not alter the circumstances of this case: Dawson is currently incarcerated and charged with multiple felonies based, at least in part, on the same conduct that underlies the civil actions. Thus, it is beyond doubt that Dawson is subject to immediate and substantial criminal exposure in New York State court, and that the plaintiffs in the civil actions seek to litigate the same matters at issue in the criminal action.

("Lisa"), may attempt to transfer or to hide assets that may otherwise be used to compensate plaintiffs, or to destroy evidence relevant to the civil actions (Batik Opp., at 5; Countrywide's Opp., at 10).

The Court recognizes that a "stay will result in inconvenience and delay to plaintiffs. But under settled authority the Fifth Amendment is the more important consideration." *Volmar Distrib., Inc.*, 152 F.R.D. at 40 (citing *Vardi Trading Co.*, 1987 WL 17662 at *2 ("A stay of these civil proceedings constitutes a necessary and hence appropriate safeguard of defendants' [F]ifth [A]mendment privilege."), *Brock v. Tolkow*, 109 F.R.D. 116, 121 (E.D.N.Y. 1985), and *Dienstag v. Bronsen*, 49 F.R.D. 327, 329 (S.D.N.Y. 1970)) (additional internal citation omitted). As such, with regard to the first four interests identified by plaintiffs, the Court finds that, by themselves, they are insufficient to outweigh the other interests discussed herein that favor a stay.[10]

In addition, with regard to the fifth interest identified by plaintiffs, the Court finds it to be insubstantial. In the SEC action, the court entered a temporary restraining order on November 30, 2006, freezing the Dawson defendants' assets and "prohibiting the destruction, alteration or concealment of documents."[11] (*S.E.C. v. Dawson*, Temporary Restraining Order dated Nov. 30, 2006.) In addition, in the SEC action, the court granted the SEC the right to conduct ongoing discovery in order to monitor and to enforce the freeze on the Dawson defendants' assets, notwithstanding the stay of discovery in that action. On August 27, 2007, this Court adopted Judge Boyle's Report and Recommendation regarding the SEC's motion for a preliminary injunction, thus imposing a freeze on the Dawson defendants' assets and prohibiting the destruction of evidence related to their alleged misconduct. (*See S.E.C. v. Dawson*, Order dated August 27, 2007.)

Therefore, the Court finds that previous orders in the SEC action have sufficiently addressed plaintiffs' concerns regarding the transfer of assets or destruction of evidence by the Dawson defendants.[12] *Cf. Sterling Nat'l*

---

[10] Of course, the parties in the civil actions are "free to petition this Court to lift or modify the stay should there be [a] change in circumstances that would warrant such action." *Brock*, 109 F.R.D. at 121; *see, e.g., Volmar Distrib., Inc.*, 152 F.R.D. at 40 ("We note that plaintiffs retain the opportunity to move to vacate the stay if warranted by a change of circumstances."); *see also Arden Way Assocs. v. Boesky*, 660 F. Supp. 1494, 1500 (S.D.N.Y. 1987) (noting that a court may re-evaluate deferral of civil discovery "if and when the balance of burdens, and private and public interests so requires").

[11] On January 5, 2007, the court extended the temporary restraining order pending a final determination on the SEC's request for preliminary injunctive relief. (*S.E.C. v. Dawson*, Jan. 5, 2007 Order.)

[12] Plaintiffs correctly point out that, in the SEC action, the SEC has already brought two contempt motions against Dawson arising from his alleged violation of the freeze on his assets. (Batiks' Opp., at 5.) However, the Court rejects plaintiffs' argument that these contempt motions demonstrate that there remains a substantial risk that a stay will permit Dawson to hide or to transfer his remaining assets. Instead, the Court finds that the SEC's identification of asset transfers by Dawson that are allegedly in violation of the freeze on his assets, and the Court's ongoing ability to use the preliminary injunction as an enforcement mechanism to ensure that Dawson's assets are not improperly distributed, demonstrates that, in fact, the manner in which Dawson or his wife distributes his assets is subject to effective

*Bank*, 175 F. Supp. 2d at 579 ("[P]ermitting a further delay during which assets can be dispersed or hidden . . . will increase the risks that plaintiff could succeed in the litigation, without being able to collect on any judgment."). Furthermore, the Court notes that Dawson is currently incarcerated and, thus, his ability to transfer funds or to destroy evidence is significantly diminished. In any event, "due to the overlapping issues in the criminal and civil trials, the criminal justice system will help [to] safeguard the evidence." *Volmar Distrib., Inc.*, 152 F.R.D. at 40.

The interest in "judicial efficiency" also favors the grant of a stay of the civil actions. The Court has an obvious interest in the "expeditious resolution of cases before it," and a stay of the civil actions would undermine that interest by delaying a resolution of the actions. *Travelers cas. & Sur. Co. v. Vanderbilt Group, LLC*, Nos. 01 Civ. 7927, 01 Civ. 10695 (DLC), 2002 WL 844345, at *4 (S.D.N.Y. May 2, 2002); *see also Karimona Investments, LLC v. Weinreb*, No. 02 Civ. 1792 (WHP) (THK), 2003 WL 941404, at *4 (S.D.N.Y. March 7, 2003).

However, although a stay pending resolution of the criminal action may result in an immediate delay in the progress of the civil actions, it is likely that the resolution of the criminal action will, ultimately, further this Court's interest in the efficient disposition of the civil actions. That is, the "resolution of the criminal case may increase prospects for settlement of the civil case . . . [d]ue to differences in the standards of proof between civil suits and criminal prosecutions" which may result in the criminal disposition having "a collateral estoppel or res judicata effect on some or all of the overlapping issues." *Parallel Proceedings*, 129 F.R.D. at 204 (noting that a conviction of a defendant in a parallel criminal case may "effectively dispose of all common issues in a subsequent civil action"); *Transworld Mechanical*, 886 F. Supp. at 1140 (same); *see also S.E.C. v. Kozlowski*, No. 02 Civ. 7312 (RWS), 2003 WL 1888729, at *1 (S.D.N.Y. April 15, 2003). Moreover, as Judge Boyle stated in granting a stay of the SEC action, "many of the issues here will be disposed of in [the criminal] proceeding whereas if we proceeded first here, much pertinent information would probably be withheld" due to Dawson's invocation of his Fifth Amendment privilege against self-incrimination. (*S.E.C. v. Dawson*, Feb. 2, 2007 order (internal quotation marks and citation omitted)). Accordingly, because the resolution of the criminal action is likely to further the efficient resolution of the civil actions, the Court finds that this factor favors a stay.

Finally, a stay of this case "would not cause serious harm to any public interest." *Transworld Mechanical*, 886 F. Supp. at 1140. Plaintiffs correctly argue that the public interest would be advanced by permitting the parties aggrieved by Dawson's allegedly improper conduct to "promptly recover[]" damages from the defendants in the civil actions. (Countrywide Opp., at 12; Batik Opp., at 7; Mauro Obj., at 12-13.); *see Parallel Proceedings*, 129 F.R.D. at 205 ("[B]oth plaintiffs and defendants have an interest in a timely judgment."). However, the public interest would also be served by permitting the prosecution of Dawson to proceed and to possibly provide some benefit to the prompt resolution of the civil actions.

---

monitoring and will remain so during the pendency of the stay.

Accordingly, the Court finds that, under the circumstances of this case, the interests at stake favor a stay of the civil actions.

2. Stay as to the Remaining Defendants

Plaintiffs argue that, even if a stay is entered as to Dawson, the actions should not be stayed as to the remaining defendants. The Court disagrees, and finds that the efficient resolution of these actions requires a stay as to all defendants.

First, as to Dawsons' investment advisory corporations, it is beyond doubt that the corporations cannot adequately defend themselves without the testimony of Dawson; plaintiffs' allegations against the investment advisory corporations are based entirely on the conduct of Dawson himself. Accordingly, the stay as to Dawson must extend, by necessity, as to Dawson's investment advisory corporations.

Second, the Court finds that the civil actions should also be stayed as to the remaining defendants in the civil actions until the criminal action is resolved.[13] Such a stay is necessary in order to avoid duplication of discovery efforts; in other words, if this Court were to grant a stay against only the Dawson defendants, the remaining parties would have to first conduct discovery without the Dawson defendants and then, upon resolution of the criminal action, conduct further discovery related to such defendants. *See, e.g., Transworld Mechanical*, 886 F. Supp. at 1139 (staying action in its entirety where criminal case was pending only against certain defendants in order to "avoid duplication of discovery efforts").

In addition, it appears likely that the information that would be obtained from such partial discovery – that is, discovery without the participation of the Dawson defendants – would prove ineffective in resolving any of the claims asserted in the civil actions against *any* of the various defendants. For instance, in the Mauro action, plaintiff Mauro argues that the stay should not extend to her claims against parties other than the Dawson defendants – namely, Countrywide, the mortgagee in that case. According to Mauro, her claims against Countrywide are "independent of the causes of action against Dawson" and, therefore, should not be subject to the stay. However, it is clear from Mauro's complaint that Dawson is a central figure in her claims against Countrywide, as he allegedly induced Mauro to enter into the mortgage transactions, misappropriated the funds therefrom, and, as the "mortgage broker[] or agent for Countrywide," was at least partially responsible for the parties' alleged failure to provide Mauro with the requisite information regarding the mortgages. (*See* Mauro Compl. ¶ 34 ("At the closing, Countrywide . . . as well as Dawson, as the mortgage broker, or agent for Countrywide and/or [Mortgage Electronic Registration Systems, Inc.], as lender, . . . failed to provide to [p]laintiff complete sets of the closing documents for both Mortgage Loans.").) Accordingly, because a partial stay in the Mauro action would almost certainly lead to "duplicative discovery efforts" following the lifting of the stay as to the Dawson defendants, the Court declines to exclude Mauro's claims against Countrywide from the scope of the stay.

---

[13] The remaining defendants include Countywide in the Mauro action; and Lisa Dawson, Taxx Plus Services Ltd., FFP Securities, Inc., Granite Financial, LLC, and Bruce Baker in the Batik action.

11

Similarly, Dawson is the central figure in the Batik action. The entirety of the Batiks' claims arise from Dawson's allegedly fraudulent misrepresentations to the Batiks and his misappropriation of their investments. The claims against those defendants other than the Dawson defendants relate to the other defendants' alleged complicity in Dawson's misconduct, or their alleged failure to properly supervise Dawson's activities while he was under their control or supervision.[14] Therefore, because a partial stay in the Batik action would also lead to duplicative discovery efforts following the lifting of the stay as to the Dawson defendants, the Court declines to exclude the Batiks' claims against the non-Dawson defendants from the scope of the stay.[15]

### III. CONCLUSION

For the reasons stated above, Dawson's motion to stay discovery in the civil actions is granted. Discovery in the civil actions is stayed pending the resolution of the criminal action against Dawson.[16]

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: August 27, 2007
Central Islip, New York

* * *

The attorney for the Parkers is Gregory A. Blue, Esq., Morgenstern Jacobs & Blue, LLC, 885 Third Avenue, New York, New York 10022. The attorney for the Batiks is John E. Lawlor, Esq., 129 Third Street, Mineola, New York 11501. The attorney for Mauro is Kevin R. Toole, Esq., Scott A. Rosenberg, P.C., 900 Merchants Concourse, Suite 208, Westbury, New York 11590. The attorney for defendant Dawson is Peter J. Tomao, Esq., 226 Seventh Street, Suite 302, Garden City, New York, 11530. The attorney for defendant Countrywide is Steven S. Rand, Esq., Zeichner Ellman & Krause, 575 Lexington Avenue, New York, New York 10022. The attorney for defendant FFP Securities, Inc., is Vincent Suba, Esq., Boundas, Skarzynski,

---

[14] Specifically, the Batiks allege, *inter alia*, that (1) Taxx Plus Services Ltd. is owned by Lisa Dawson, that Dawson deposited some of the Batiks' investments in the company, and that Lisa Dawson misappropriated those investments for her own use (Batiks' Compl. ¶ 28); (2) Dawson maintained certain records regarding the Batiks' investments in offices shared by FFP Securities and Granite Financial (*id.* ¶ 28); (3) Bruce Baker knew of Dawson's misconduct and "actively participated in the conduct of [Dawson]" by corresponding with the Batiks regarding their investment accounts (*id.* ¶ 28); (4) Dawson created an FFP Securities account for the Batiks, and Bruce Baker knowingly misrepresented to the Batiks that it contained a large sum of money (*id.* ¶¶ 30-31); and (5) Granite Financial and FFP Securities either "controlled" or knew of Dawson's misconduct but failed to adequately monitor his activities (*id.* ¶¶ 38-39, 49-66).

[15] In the Parker action, the Parkers assert claims solely against the Dawson defendants.

[16] The Court need not direct Dawson's counsel to submit recurring reports regarding the status of the criminal action because the court in *S.E.C. v. Dawson* previously ordered the NCDA to submit such reports to the Court and counsel every thirty days.

Walsh & Black, LLC, One Battery Park Plaza, New York, New York 10004.  The attorney for defendant Granite Financial, LLC, is Kurt Andrew Schaub, Esq., Robert & Robert PLLC, 150 Broadhollow Road, #314, Melville, New York 11747.  The attorney for defendant Bruce Baker is Paul R. Williams, Esq., Schupbach, Williams & Pavone, LLP, 1010 Franklin Avenue, Garden City, New York 11530.